UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

FRANK M. BARNEY, Individually )
and as Administrator of the Estate )
of SONCERA KIMBERLY )
BARNEY, )
)
        Plaintiffs, )
)
v. )           CV420-173
)
GREGORY T. PETERS. M.D., )
REAL RADIOLOGY, LLC, )
JOHN DOES 1-5, and )
JOHN DOES, INC.'S 1-5, )
)
        Defendants. )

## ORDER

Before the Court is Defendant Gregory T. Peters, M.D.'s Motion to Exclude Drs. Steve Braunstein and Aaron Pederson's Opinions on Standard of Care. Doc. 87. Plaintiffs responded in opposition, doc. 90, and Dr. Peters replied, doc. 98. The motion is ripe for decision.

## BACKGROUND

Plaintiffs Soncera Kimberly Barney and Frank M. Barney brought this medical malpractice action in the State Court of Liberty County, Georgia; it was subsequently removed. Doc. 1-1 at 2 (original Complaint);

doc. 1 at 1 (Notice of Removal).[1]  The Amended Complaint alleges that Dr. Peters failed to identify a lytic lesion in the right clavicle area when reviewing Soncera Barney's CT scan, which caused a ten-month delay in the treatment of her "progressing, but undiagnosed right clavicular cancer." *See, e.g.*, doc. 64 at 9-10.

Plaintiffs identified Dr. Steve Braunstein as a retained expert in radiation oncology and radiology pursuant to Fed. R. Civ. P. 26(a)(2)(B). Doc. 79 at 5-6.  His expected causation testimony relates to the course of treatment Soncera Barney would have received had Dr. Peters identified the lesion.  *See* doc. 90 at 1.  Plaintiffs also identified Dr. Pederson as a treating physician in their initial disclosures, and later designated him as a non-retained expert.  *See* doc. 87 at 1 n.1; doc. 79 at 8-9.  Dr. Pederson's expected testimony relates to the development and implementation of the "plan of care for Mrs. Barney's radiation oncology treatment." Doc. 87 at 5.

Dr. Peters argues that neither Dr. Braunstein nor Dr. Pederson are qualified to opine whether Dr. Peters met the applicable standard of care

---

[1]  Soncera Barney passed away after removal, and Frank Barney asserted a wrongful death claim on her behalf.  *See* doc. 64 at 1.

when reviewing the scan.  *See* doc. 87 at 8-14.  Although describing the issue as "a close call," Plaintiff "does not oppose Drs. Braunstein's and Pederson's preclusions from testifying that Dr. Peters violated the standard of care."  Doc. 90 at 4-5.  Dr. Peters, however, also seeks to exclude several of their opinions which "could be reasonably construed by a jury as being tantamount to an opinion relating to the standard of care." Doc. 87 at 15; *see also* doc. 98 at 2-3.

## ANALYSIS

Federal Rule of Evidence 702 compels the Court to perform a "gatekeeping" function concerning the admissibility of expert scientific evidence.  *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 n.7, 597 (1993)). In performing this task, the Court must consider whether the party offering the evidence has shown:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Frazier*, 387 F.3d at 1260 (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir.1998)).  The proponent of the expert opinion bears the burden of establishing qualification, reliability, and helpfulness by a preponderance of the evidence.  *Daubert*, 509 U.S. at 592, n.10.

Under the first prong, "[t]he Eleventh Circuit has stressed 'that when determining the competency of an expert witness in state medical malpractice claims, federal courts first should apply the competency standard under state law.' " *Anderson v. Columbia Cnty., Ga.*, 2014 WL 8103792, at *7 n.11 (S.D. Ga. Mar. 31, 2014) (quoting *Dukes v. Georgia*, 428 F. Supp. 2d 1298, 1313 (N.D. Ga. 2006)).  "Georgia law imposes competency requirements above and beyond the Federal Rules of Evidence." *Id.* at *7.  "To qualify as an expert in a medical malpractice action in Georgia, the witness must (1) have actual knowledge and experience in the relevant area through either active practice or teaching and (2) either be in the same profession as the defendant whose conduct is at issue or qualify for [an] exception to the same profession requirement." *Dutton v. United States*, 621 F. App'x 962, 967 (11th Cir.

2015) (citing *Hankla v. Postell*, 749 S.E.2d 726, 729 (Ga. 2013)) (internal

alterations and quotations omitted).

Additionally, "[b]ecause of the powerful and potentially misleading

effect of expert evidence, [Cit.] sometimes expert opinions that otherwise

meet the admissibility requirements may still be excluded by applying

[Federal Rule of Evidence] 403." *Frazier*, 387 F.3d at 1263.  Rule 403

provides that:

> The court may exclude relevant evidence if its probative value
> is substantially outweighed by a danger of one or more of the
> following: unfair prejudice, confusing the issues, misleading
> the jury, undue delay, wasting time, or needlessly presenting
> cumulative evidence.

Fed. R. Evid. 403.  "Indeed, the judge in weighing possible prejudice

against probative force under Rule 403 . . . exercises more control over

experts than over lay witnesses. . . . Simply put, expert testimony may be

assigned talismanic significance in the eyes of lay jurors, and, therefore,

the district courts must take care to weigh the value of such evidence

against its potential to mislead or confuse." *Frazier*, 387 F.3d at 1263.

Finally, as discussed, Dr. Peters challenges several opinions as

impermissibly related to the applicable standard of care.  Doc. 87 at 15;

doc. 98 at 2-3.  Under Georgia law, "the minimum standard of care for

the practice of medicine . . . is defined as . . . a reasonable degree of care and skill.  Any injury resulting from a want of such care and skill shall be a tort for which a recovery may be had."  David Hricik & Charles R. Adams III, Ga. Law of Torts § 12:5 (2021) (quoting O.C.G.A. § 51-1-27). Accordingly, to the extent an expert offers an opinion that Dr. Peters "did something that [he] should not have done, or failed to do something that [he] should have done pursuant to the duty owed" when he reviewed the scan, that opinion relates to the standard of care.  *Cechman v. Travis*, 202 Ga. App. 255, 257 (1991) (quoting *Veterans Organization of Fort Oglethorpe, Ga., Inc. v. Potter*, 111 Ga. App. 201, 205 (1965)).

The parties agree that the experts (as radiation oncologists) may not provide pure standard-of-care opinions—opinions that Dr. Peters (as a diagnostic radiologist) should have detected the lesion and failed to do so.  However, Dr. Peters has challenged additional categories of testimony that Plaintiff suggests might be offered by the two experts.  As explained more fully below, both Dr. Braunstein and Dr. Peters may testify about the physical characteristics of the lesion as it appears in the imaging, *e.g.*, its dimensions and location, to the extent those characteristics are relevant to their areas of expertise.  They may not,

however, (1) testify about the lesion's conspicuity, *i.e.*, how easily observable it is, and (2) vaguely assert that it is observable without specifying *to whom* it is observable.   The Court will address these categories in turn.

1. *Dr. Braunstein and Dr. Pederson's opinions that Dr. Peters violated the standard of care are excluded.*

The parties agree that Dr. Braunstein and Dr. Pederson are not qualified to opine whether Dr. Peters violated the standard of care.  *See, e.g.*, doc. 87 at 8, 11; doc. 90 at 4-5.   Dr. Peters accordingly seeks to exclude Dr. Braunstein's "opinion . . . that there was a missed diagnosis." Doc. 87 at 5.   This opinion is **EXCLUDED** because it is a direct comment on what Dr. Peters "failed to do", *Cechman*, 202 Ga. App. at 257, and does not relate to the care Soncera Barney would have received had Dr. Peters identified the lesion.

Dr. Braunstein provided a similarly problematic opinion at his deposition.  When asked "why [he thinks] it's fair for [him] . . . to testify about the standard of care applicable to [Dr. Peters]", Dr. Braunstein responded:

I think there's overlap in what we do, but in this case
specifically, there is a recognition that a physician should be
able – who's trained in radiology, should be able to recognize
what was a very obvious[2] lesion.

Doc. 90-1 at 7; *see also* doc. 98 at 2 (Dr. Peters' challenge to this opinion).

This is an opinion that Dr. Peters should have detected the lesion and

failed to do so, and does not relate to the scope of Dr. Braunstein's

expertise.   It is therefore **EXCLUDED**.   For the same reason, Dr.

Braunstein's testimony that Dr. Peters "violated the standard of care in

not recognizing, identifying, and reporting on the approximate 1.6 cm

right clavicle lytic lesion", doc. 87 at 3, is **EXCLUDED**.

2.  *The experts may testify about the lesion's measurable physical
    characteristics.*

The parties also agree that Dr. Braunstein and Dr. Pederson are

qualified to opine on the lesion's measurable physical characteristics as

it appears in the scan to the extent the characteristics are related to their

permissible causation or treatment testimony.[3]   Dr. Peters, however,

---

2   Dr. Braunstein's opinion that the lesion is "very obvious" is a comment on its
conspicuity which, as discussed below, is **EXCLUDED**.

3   *See, e.g.*, doc. 90 at 3-4 (Plaintiffs argue that Dr. Braunstein and Dr. Pederson
should be permitted to testify about the lesion's size in centimeters); doc. 98 at 4 (Dr.
Peters seeks exclusion of standard-of-care opinions, "as opposed to objective
testimony regarding the size and location of the lesion to the extent it impacts [the
experts'] opinions about treatment or prognosis.").

highlights several opinions which include lesion dimension information in order to comment on the applicable standard of care. *See, e.g.*, doc. 87 at 3 (Dr. Braunstein opines that Dr. Peters "violated the standard of care in not recognizing, identifying, and reporting on the approximate 1.6 cm right clavicle lytic lesion clearly visible and observable within multiple images of Mrs. Barney's September 7, 2018 CT scan" and that he "fell below the standard of care in failing to identify and report said abnormal right clavicle lytic lesion[.]"); *see also* doc. 87 at 5 ("In his deposition, he stated that Mrs. Barney 'had a 2-centimeter tumor on her clavicle from a year prior that was missed on the diagnostic CT' and this his 'opinion is that there was a missed diagnosis.' "). To the extent either expert seeks to testify that Dr. Peters should have identified the lesion because of its measurable physical characteristics, that testimony is **EXCLUDED** because it is an impermissible statement that Dr. Peters violated the standard of care.

3. *Dr. Braunstein and Dr. Pederson's opinions about the general observability and conspicuity of the lesion are excluded.*

The parties' briefing also identifies Dr. Braunstein and Dr. Pederson's opinions about the *observability* of the lesion in the scan. Before discussing the disputed opinions, the Court notes that the parties

do not dispute that the experts may testify about whether *the experts themselves* can see the lesion.[4]   Dr. Peters instead challenges their opinions which (1) vaguely suggest that the lesion is generally "observable" without specifying to whom it is observable; and (2) relate to the lesion's conspicuity, *i.e.*, how *easily* one may view it in the scan.

As discussed, under Rule 403, the Court may exclude evidence if its probative value is substantially outweighed by several enumerated dangers, including "confusing the issues" and "misleading the jury." Fed. R. Evid. 403.   The Eleventh Circuit has clarified that "imprecise and unspecific" expert opinions may be excluded because they "could serve to confuse the jury, and [may] well . . . mis[lead] it." *Frazier*, 387 F.3d at 1266.   Such opinions create the "potential for allowing the jurors to [make an] . . . illegitimate inference[.]"   Kenneth W. Graham, 22A Fed. Prac. & Proc. Evid. § 5216.1 (2d ed. 2022).

First, even if statements about the lesion's *general* observability are "helpful" to understanding causation and the plan of care, the Court **EXCLUDES** them pursuant to Fed. R. Evid. 403.   *See, e.g.*, doc. 87 at 3

---

[4]  Although Dr. Peters does not expressly concede that the experts may testify that they can see a lesion in the scan, he allows that they may testify about its measurable characteristic, as discussed above.  *See* doc. 98 at 4.  In order to discuss its measurable characteristics, the experts must also be able to testify that they see it in the scan.

(the lesion is "visible and observable"); doc. 90 at 4 (the lesion is able "to be seen").  The probative value of these general observability opinions is admittedly high, since one of the central issues in this case is whether Dr. Peters should have identified the lesion.  However, these unspecific opinions do not limit the subset of individuals who can observe the lesion, and the risk that jurors could interpret them to mean that *Dr. Peters* should have seen it substantially outweighs their probative value.  Accordingly, in light of the Court's obligation to "weigh the value of [expert opinions] against [their] potential to mislead or confuse", *Frazier*, 387 F.3d at 1263, these general observability opinions are **EXCLUDED**.

Similarly, statements about the lesion's conspicuity are **EXCLUDED** pursuant to Fed. R. Civ. P. 403.  *See, e.g.*, doc. 87 at 3 (Dr. Braunstein opines that the lesion is "*clearly* visible and observable"); doc. 90 at 2-3 (the lesion is "very *obvious*"); *id.* at 4 (Dr. Pederson testified that the "tumor" on the imaging was "*large enough* to be seen").  In the context of this case, statements about the lesion's clarity or obviousness could lead jurors to infer that the experts are providing an opinion which they

are not qualified to provide: that Dr. Peters should have detected the lesion.[5]

## CONCLUSION

For the foregoing reasons, to the extent Dr. Peters seeks to exclude Dr. Braunstein and Dr. Pederson's opinions that Dr. Peters breached the standard of care, the motion is **GRANTED**. Doc. 87. To the extent it seeks to exclude their opinions about the conspicuity and general observability of the lesion, it is **GRANTED**. Doc. 87. As discussed, they may still testify that *they* can observe the lesion in the scan, and discuss its physical, measurable characteristics, to the extent that testimony is relevant to their areas of expertise.

**SO ORDERED**, this 28th day of June, 2022.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[5] To the extent either of the experts seek to testify that the lesion is, *e.g.*, "large enough to be seen", clear, or obvious *to them*, that testimony is similarly **EXCLUDED** because of the high risk that jurors will infer that it relates to the standard of care.